IN RE STERILIZATION OF GLORIA CAVITT.
STATE OF NEBRASKA, APPELLANT AND CROSS-APPELLEE, V. GLORIA CAVITT ET AL., APPELLEES AND CROSS-APPELLANTS.
159 N. W. 2d 566

Filed June 14, 1968. No. 36648.

See 182 Neb. 712, 157 N. W. 2d 171, for original opinion.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellant.

Vincent L. Dowding and Luebs, Tracy & Huebner, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

Appellee sets out 17 assignments of error in her motion for rehearing, several of which are merely restatements of her argument on the merits, although some are directed to alleged misstatements in specific findings.

Appellee's whole case is premised on the fact that the sterilization statute does not define who is a mentally deficient patient. Section 83-501, R. R. S. 1943, provides: "No mentally deficient patient, physically capable of bearing or begetting offspring, shall be paroled or discharged from the Beatrice State Home except as provided in sections 83-502 to 83-507 or by order of a court of competent jurisdiction." This statute must be read in connection with Chapter 83, article 2, R. R. S. 1943, which is the article providing for the Beatrice State Home. This article provides that only the feeble-minded may be committed to the home, and section 83-219, R. R. S. 1943, specifically defines who may be considered a feeble-minded person. Appellee was committed to the home as a feeble-minded person. The sterilization statute is only operative for those persons committed to the Beatrice State Home, so that mentally deficient as used in the statute must be defined as one who is feeble-minded.

Appellee seems to feel that the federal constitutional issue was not considered by this court. The federal constitutional issue is embraced in two points, that the act fails to provide due process, and that it permits cruel and unusual punishment. Both of these points are an-

swered in our opinion. Actually, the procedure outlined is, if anything, more specific than that approved by the United States Supreme Court in the opinion by Justice Holmes in Buck v. Bell, 274 U. S. 200, 47 S. Ct. 584, 71 L. Ed. 1000. Our statutes specifically provide that a notice of the time and place of hearing shall be served upon the patient, and make provision for a guardian. It provides for the attendance of the patient at the hearing; the right to be represented by counsel; requires that the evidence be reduced to writing; provides for the furnishing of a copy to the patient or his guardian; and the time for appeal. Our statute adequately meets the tests of due process provided by federal law.

The following from Skinner v. Oklahoma ex rel. Williamson, 316 U. S. 535, 62 S. Ct. 1110, 86 L. Ed. 1655, is appropriate herein: "It was stated in Buck v. Bell, supra, that the claim that state legislation violates the equal protection clause of the Fourteenth Amendment is 'the usual last resort of constitutional arguments.' 274 U. S. p. 208. Under our constitutional system the States in determining the reach and scope of particular legislation need not provide 'abstract symmetry.' Patsone v. Pennsylvania, 232 U. S. 138, 144."

As to the question of permitting cruel and inhuman punishment, this argument is now merely one of form applied to these statutes. Twenty-seven states have compulsory sterilization laws for the feeble-minded and eighteen for the insane. The cases are fairly uniform in holding that a sexualization operation is not a cruel punishment. Sterilization has been sustained not only for the mentally deficient but also in cases of habitual criminality. Our statute requires the sterilization to be done at the Beatrice State Home under the direction of a board member. We would interpret the statute to require the simplest procedure possible to effect sterilization.

Buck v. Bell, *supra,* answered the question that in no

circumstances can an order of sterilization be provided. As Justice Holmes said: "It would be strange if it (society) could not call upon those who already sap the strength of the State for these lesser sacrifices, often not felt to be such by those concerned, in order to prevent our being swamped with incompetence. It is better for all the world, if instead of waiting to execute degenerate offspring for crime, or to let them starve for their imbecility, society can prevent those who are manifestly unfit from continuing their kind."

Appellee urges that the statute is unconstitutional because there is no requirement for a specific finding that offspring will likely be defective. It is true this requirement was in the previous statute, but we fail to find any law which makes this requirement a condition precedent to legality of the act. Some states permit sterilization of habitual criminals. · The requirement of defective offspring is not required in those instances. There are only two requirements for sterilization in our statute, and both of them are present herein: (1) The patient has been found to be mentally deficient; and (2) the patient is apparently capable of bearing offspring. The evidence is undisputed that appellee has a very low IQ; has been a behavioral problem at the institution; before being institutionalized she had eight illegitimate children; is still able to procreate; and desires more children.

Appellee suggests that we erred in stating that the Beatrice State Home is the only institution to which mentally defective persons may be committed, and calls attention to a provision which permits the transfer of the feeble-minded from other institutions to the Beatrice institution. Actually, the Beatrice State Home is the home provided for the feeble-minded, and there is no undue discrimination in requiring sterilization only at that institution. We suggest the following quotation from Justice Holmes in Buck v. Bell, *supra,* is a sufficient answer to this contention: "But, it is said, however it

might be if this reasoning were applied generally, it fails when it is confined to the small number who are in the institutions named and is not applied to the multitudes outside. It is the usual last resort of constitutional arguments to point out shortcomings of this sort. But the answer is that the law does all that is needed when it does all that it can, indicates a policy, applies it to all within the lines, and seeks to bring within the lines all similarly situated so far and so fast as its means allow. Of course so far as the operations enable those who otherwise must be kept confined to be returned to the world, and thus open the asylum to others, the equality aimed at will be more nearly reached."

Appellee suggests that we erred in failing to consider the fact that appellee has not requested release or parole from the Beatrice State Home. It is true that appellee did not make such a request, and that the superintendent recommended to the board that she might be a subject for parole if sterilized. The board found, after careful psychiatric and medical examination, that appellee should not be paroled or discharged from the Beatrice State Home unless she was sterilized. The order does not require her sterilization. It does provide, in accordance with the statute, that she shall not be released unless she is sterilized. *The choice is hers.*

MOTION FOR REHEARING DENIED.
FORMER OPINION ADHERED TO.

BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., dissenting.